UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAE DEAN STRAWN,<br><br>**Plaintiff**<br><br>v.<br><br>BRUCE SOKOLOFF, J. ANAYA, CITY OF PORTERVIILLE, and DOES 1-25 inclusive,<br><br>**Defendants** | CASE NO. 1:22-CV-1245 AWI EPG<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 10) |

This is s civil rights lawsuit that arises from an encounter between Plaintiff Rae Strawn ("Strawn") and two officers of the Porterville Police Department ("PPD"), Defendants Bruce Sokoloff ("Sokoloff") and J. Anaya ("Anaya").  Strawn brings claims against Sokoloff, Anaya, and City of Porterville ("the City") under 42 U.S.C. § 1983 for violations of the Fourth Amendment and *Monell* liability, and California common law tort theories (assault, battery, false arrest, false imprisonment, intentional and negligent infliction of emotional distress ("IIED" and "NIED" respectively), negligent supervision, negligent retention, negligent hiring, negligent training, gross negligence and willful and wanton negligence).  Currently before the Court is Defendants' Rule 12(b)(6) motion to dismiss and alternative Rule 12(e) motion for more definite statement.  For the reasons that follow, Defendants' Rule 12(b)(6) motion will be granted in part and denied in part and the Rule 12(e) motion will be denied.

## RULE 12(b)(6) FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Yoshikawa v. Seguirant, 41 F.4th 1109, 1114 (9th Cir. 2022). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Benavidez, 993 F.3d at 1145. The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Armstrong v. Reynolds, 22 F.4th 1058, 1070 (9th Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Miller v. Sawant, 18 F.4th 328, 336 (9th Cir. 2022). Plaintiffs cannot "rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery." Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1177 (9th Cir. 2021); see Mujica v. AirScan, Inc., 771 F.3d 580, 593 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

# FACTUAL BACKGROUND

From the Complaint, on January 18, 2022, Strawn was attending a public City council meeting. Prior to the beginning of the meeting, Sokoloff approached Strawn and ordered her to put on a facemask. The California Department of Public Health ("CDPH") had reinstated an indoor masking mandate from December 15, 2021 to February 15, 2022. See Doc. No. 10-2 at Ex. A.[1] Facemasks were available to the public at a table near the entrance of the council building. Strawn got facemask from the table and put the mask on.

A few minutes later, Sokoloff approached Strawn and ordered her to pull the facemask over her nose. Strawn replied that she was wearing her mask in the exact same manner as Sokoloff. At that point, Sokoloff ordered Strawn to stand up because she was now under arrest. Strawn asked Sokoloff what law she had violated, but Sokoloff did not answer.

Sokoloff and Anaya then allegedly assaulted, battered, and arrested Strawn with handcuffs. Sokoloff and Anaya forcefibly removed Strawn from the City council chambers and took Strawn to their patrol vehicle, where they searched Strawn. Sokoloff and Anaya forced Strawn into their patrol vehicle and transported her to PPD for booking. Sokoloff and Anaya allegedly had no probable cause to arrest or search Strawn.

# DEFENDANTS' MOTIONS

*Defendants' Arguments*

Defendants argues that Strawn's second, third, fourth and fifth claims should be dismissed.

With respect to the second cause of action for *Monell* liability, Defendants argue that the Complaint is devoid of any facts that plausibly show that the City had a custom or practice of

---

[1] Defendants request that the Court take judicial notice of a CDPH publication dated September 20, 2022. See Doc. No. 10-2 at Ex. A. The publication deals with "Guidance for the Use of Face Masks." Id. Included within the document's "Background" section is a paragraph that states that a "universal indoor masking requirement was reinstated on December 15, 2021," but the requirement expired on February 15, 2022. Id. Strawn does not object to the Court taking judicial notice of this CDPH publication. Nevertheless, the CDPH document post-dates the events of January 18, 2022 by eight months and thus, is of a very limited value. More useful to resolution of this motion would have been a copy of the actual December 15, 2021 masking mandate issued by the CDPH, but that document was not submitted for the Court to review. Considering the absence of an objection, but also considering the limited relevance of the publication at issue, the Court will only take judicial notice that the CDPH issued a universal indoor masking requirement, the exact terms of which are unknown, from December 15, 2021 to February 15, 2022. See Fed. R. Evid. 201.

depriving people of their constitutional rights.  Further, the Complaint fails to identify a final policymaker who either created a policy or ratified unconstitutional conduct.  While the Complaint alleges a failure to discipline, that alone does not demonstrate ratification.

With respect to the assault and battery claims, the Complaint is conclusory and contains no plausible facts that support the elements of these torts.  In particular, there are no facts alleged that the officers acted with an intent to harm or that Strawn did not consent to the touching.

With respect to the false arrest/false imprisonment claim, the Complaint contains no allegations that address the necessary elements of the absence of consent and the absence of lawful privilege.  Further, the arrest occurred during a time in which the CDPH had an indoor mask mandate in place.  Therefore, the arrest of Strawn was lawful.

With respect to the claims of IIED, NIED, gross negligence, and willful and wanton negligence, the Complaint fails to identify a statutory provision that would make the City liable. Without a statute that makes the City liable, no plausible claim is stated.

With respect to the negligent hiring, retention, supervision, and training claims, the Complaint fails to identify a statute for purposes of direct liability that would make the City liable. Further, there is no vicarious liability through Gov. Code § 815.2(a) against the City for these because there was no special relationship between Defendants and Strawn.  Therefore, no plausible claims can be stated.

Finally, Defendants argue that the request for punitive damages must be dismissed. Punitive damages against the City cannot be recovered under either state or federal law, and the Complaint does not reveal an adequate factual basis to support punitive damages against Sokoloff and Anaya.

*Plaintiff's Opposition*

Strawn argues that dismissal is not appropriate.

With respect to the second cause of action, Strawn argues that she was arrested without probable cause and that the CDPH mandate was a recommendation, not a law.  She was not told what laws she was violating and was never formally charged with anything.  The City deficiently trained its officers with respect to searches, seizures, and excessive force because Strawn was

4

arrested without probable cause, was handcuffed too tightly (which resulted in the cuffs cutting into her skin), was forcibly placed in a patrol car even though she could not bend her knee due to multiple surgeries, and had her complaints of physical injury ignored.  This demonstrates an obvious need to train about constitutional limitations.  Further, the City ratified Sokoloff's and Anaya's unconstitutional actions because the City approved of their actions and the bases for them.  Because the Complaint demonstrates a need to train and ratification, dismissal is improper.

With respect to assault and battery, the Complaint alleges that Sokoloff intended to place Strawn under arrest for allegedly failing to comply with a facemask requirement, forcefully removed her from the council meeting, placed her in handcuffs, and forcibly put her in the patrol vehicle.  All this caused fear, pain, and physical injuries.  These allegations support plausible claims.

With respect to false arrest/false imprisonment, the Complaint alleges that Sokoloff and Anaya did not have probable cause or reasonable suspicion to arrest or place her in the patrol vehicle or to take her to the PPD for processing.  Sokoloff and Anaya's actions constituted an arbitrary detention and they are the basis for liability against the City through Gov. Code § 815.2(a).

With respect to IIED, NIED, and gross negligence, the allegations demonstrate that Sokoloff and Anaya acted without any legal basis when they arrested, physically harmed, and transported Strawn to the PPD, all because she did not have her nose covered by a facemask, just like Sokoloff.  Sokoloff and Anaya's actions were outrageous and caused Strawn physical injury, pain, fear, humiliation, and emotional distress.  Therefore, plausible claims have been stated.

With respect to the claims for negligent hiring, retention, supervision, and training, the officers owed Strawn a duty of care under *Rowland v. Christian*, 69 Cal.2d 108 (1968) and the City is liable through Gov. Code § 815.2(a).

With respect to willful and wanton negligence, the Complaint shows that Sokoloff and Anaya acted willfully and wantonly by forcing Strawn out of the council chamber, violently putting handcuffs on her, forcibly putting her in the patrol car despite difficulty with her knee, keeping tight handcuffs on her, and ignoring her complaints.  This is sufficient to state a claim.

Finally with respect to punitive damages, the actions of the Defendants were unlawful. The CDPH mandate was a recommendation, not a law, and in fact, each county could abide by its own separate set of regulations. The City and PPD could not have been unaware that the mask mandate was not law. Therefore, the request for punitive damages should not be dismissed.

*Discussion*

1. *Monell* Liability

Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. Monell v. Department of Soc. Servs., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Castro v. County of L.A., 797 F.3d 654, 670 (9th Cir. 2015). A municipality, however, "cannot be held liable solely because it employs a tortfeasor or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a respondeat superior theory." Monell, 436 U.S. at 691; see Castro, 797 F.3d at 670. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694; Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008). Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014); Price, 513 F.3d at 966.

Here, the Complaint alleges several theories of *Monell* liability, which the Court will address separately.

    a.    Failure to Train

A failure to train or inadequate training may form the basis for municipal liability under § 1983 where the training or failure to train amounts to deliberate indifference to the rights of the

6

persons with whom the municipality's employees come into contact. Flores v. County of L.A., 758 F.3d 1154, 1158 (9th Cir. 2014); Long v. County of L.A., 442 F.3d 1178, 1186 (9th Cir. 2006). Under such a theory, the "issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." Long, 442 F.3d at 1186. A municipality is deliberately indifferent when the need for more or different action is "so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); Mortimer v. Baca, 594 F.3d 714, 723 (9th Cir. 2010). *Monell* liability is at its most tenuous when a failure to train theory is pursued. Vanegas v. City of Pasadena, 46 F.4th 1159, 1167 (9th Cir. 2022); Benavidez v. County of San Diego, 993 F.3d 1134, 1154 (9th Cir. 2021). To allege a failure to train, the plaintiff must establish "sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." Vanegas, 46 F.4th at 1167; Benavidez, 993 F.3d at 1153-54. To allege deliberate indifference, a plaintiff's factual allegations should: (1) explain how the training is deficient; and (2) show how the deficiency involved was obvious and the constitutional injury was likely to occur. See McFarland v. City of Clovis, 163 F.Supp.3d 798, 802 (E.D. Cal. 2016); Young v. City of Visalia, 687 F. Supp. 2d 1141, 1149-50 (E.D. Cal. 2009).

    Here, the Complaint alleges that the City fails to adequately train officers regarding constitutional uses of force and arrest and detention procedures. From this allegation, the Court can determine that Strawn believes that there is a problem with the PPD's training of its officers regarding the Fourth Amendment. However, that is all that can be said. Strawn has failed to allege what specific aspect of the PPD's training is deficient and what about the deficiency is so obvious that it makes a constitutional violation likely. Merely alleging that the training is "inadequate" is insufficient. Further, there are no allegations that indicate the Fourth Amendment violations at issue would not have been committed if Sokoloff and Anaya had been properly

7

trained. Therefore, no plausible claim for a failure to train is alleged. See Vanegas, 46 F.4t h at 1167; Young, 687 F.Supp.2d at 1149-50.

### b.     Ratification

"To show ratification, a plaintiff must show that an official with final policy-making authority ratified a subordinate's decision or action and the basis for it." Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999); see Sabra v. Maricopa Cty. Cmty. Coll. Dist., 44 F.4th 867, 885 (9th Cir. 2022). That is, ratification has been found "when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996). A plaintiff must show a "conscious, affirmative choice to ratify the conduct in question." Lassiter v. City of Bremerton, 556 F.3d 1049, 1055 (9th Cir. 2009). "The policymaker must have knowledge of the constitutional violation and actually approve of it," and a "mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." Lytle v. Carl, 382 F.3d 978, 987 (9th Cir. 2004). Because acquiescence is generally insufficient, the mere failure to discipline an employee will not establish ratification. See Dodge v. Evergreen Sch. Dist. #114, 56 F.4th 767, 788 (9th Cir. 2022); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1253-54 (9th Cir. 2010).

Here, the Complaint alleges that the misconduct is tacitly or overtly sanctioned as shown by PPD's failure to *inter alia* discipline Sokoloff and Anaya for deliberate indifference to Strawn's rights during this incident. See Complaint ¶ 27. No other allegations appear to pertain to ratification. To the extent that Strawn is attempting to allege *Monell* liability based on ratification, the Complaint's single allegation is insufficient. At best, Strawn's ratification theory appears to be based on a failure to discipline. However, the mere failure to discipline will not establish ratification. See Dodge, 56 F.4t h at 788; Clouthier, 591 F.3d at 1153-54. Therefore, no plausible ratification theory is alleged.

### c.     Policy, Practice, or Custom

Municipal liability may be premised on conduct pursuant to a formal or expressly adopted official policy or conduct pursuant to a longstanding practice or custom. See Gordon v. County of Orange, 6 F.4t h 961, 973 (2021); Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir.

8

2014). A "policy" is a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Fogel v. Collins, 531 F.3d 824, 834 (9th Cir. 2008). A custom or practice, though not formally or expressly adopted, may be so widespread and longstanding that it constitutes the "standard operating procedure" of the governmental entity. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996); Los Angeles Police Protective League v. Gates, 907 F.2d 879, 889-90 (9th Cir. 1990); see Gordon, 6 Cal.4th at 973. Consistent failures to investigate and discipline constitutional violations can constitute unlawful practices and customs. See Rodriguez v. County of L.A., 891 F.3d 776, 803 (9th Cir. 2018); Hunter v. County of Sacramento, 652 F.3d 1225, 1233-35 (9th Cir. 2011). However, a custom or practice cannot be based on isolated or sporadic incidents, rather, the custom or practice must be of sufficient duration, frequency, and consistency that the conduct at issue has become a traditional method of carrying out policy. Sabra, 44 F.4th at 884; Trevino, 99 F.3d at 918; see also Hyde v. City of Wilcox, 23 F.4th 863, 874-75 (9th Cir. 2022) (holding that an inadequate training policy could not be inferred from a single incident). Allegations of *Monell* liability involving a policy, practice, or custom will be sufficient for purposes of Rule 12(b)(6) where they: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur. McFarland, 163 F.Supp.3d at 802; Young, 687 F. Supp. 2d at 1149-50.

Here, the Complaint alleges that the PPD failed to: (1) adequately supervise Sokoloff and Anaya to insure that they did not violate constitutional rights; (2) failed to investigate alleged Fourth Amendment violations; and (3) failed to discipline officers for violating policies relating to the Fourth Amendment.

With respect failing to adequately supervise, no plausible claim is alleged. Although supervision is practice or custom identified, there are no factual allegations that explain how supervision is deficient. Simply alleging that the supervision was "inadequate" is too conclusory to support a plausible claim. Further, without identifying how the practice or custom is deficient,

9

the Court is unable to determine whether the custom or practice could be viewed as a cause of Strawn's harm or whether the custom or practice could reasonably be viewed as deliberately indifferent. Therefore, no plausible *Monell* claim for inadequate supervision is pled.

With respect to failing to investigate alleged Fourth Amendment violations and failing to discipline for violations of policies related to the Fourth Amendment, the Court views the allegations to mean that the PPD does not investigate and does not discipline. The complete absence of investigations and discipline regarding violations of, or policies relating to, the Fourth Amendment is a clear deficiency that sends a message that violations of the Fourth Amendment can be committed without internal consequences. The deficiencies could obviously lead to officers regularly violating the public's Fourth Amendment rights, and they support Strawn's allegations that these policies or customs led to Sokoloff and Anaya violating her individual Fourth Amendment rights. Therefore, the Court finds that Strawn has plausibly alleged *Monell* liability for the failure to investigate and the failure to discipline Fourth Amendment violations. Dismissal of these claims is inappropriate.

   2.   Battery

California courts have described a battery claim against peace officers as a counterpart to a federal § 1983 excessive force claim. See Hayes v. County of San Diego, 736 F.3d 1223, 1232 (9th Cir. 2013); Yount v. City of Sacramento, 43 Cal.4th 885, 902 (2008); Edson v. City of Anaheim, 63 Cal.App.4th 1269, 1274 (1998). A *prima facie* civil battery claim against a police officer is demonstrated by showing that the officer used an unreasonable amount of force. See Monzon v. City of Murrieta, 978 F.3d 1150, 1164 (9th Cir. 2020); Bowoto v. Chevron Corp., 621 F.3d 1116, 1129 (9th Cir. 2010); Yount, 43 Cal.4th at 902; Susag v. City of Lake Forest, 94 Cal.App.4th 1401, 1415 (2002); Edson, 63 Cal.App.4th at 1274.

Here, Defendants do not challenge Strawn's Fourth Amendment excessive force claim. In effect, Defendants are satisfied that Strawn has plausibly alleged a violation of Fourth Amendment right to be free from excessive force. Because a battery claim is essentially the same as a § 1983 claim, acceptance of the excessive force claims necessarily means that a plausible battery claim is stated. See Hayes, 736 F.3d at 1232; Yount, 43 Cal.4th at 902.

1    Additionally, the Complaint alleges Sokoloff and Anaya arrested Strawn without probable
2 cause, forcefully removed her from the City council chambers (which the Court takes to mean that
3 the officers applied physical force to Strawn and physically removed her), applied handcuffs to
4 her, and placed her in the patrol vehicle. See Complaint ¶¶ 15, 16, 35, 38.  The factual allegations
5 do not suggest that the officers had probable cause to arrest, nor do they indicate that Strawn posed
6 a physical threat to the officers.  The absence of probable cause and the absence of a physical
7 threat means that no amount of force against Strawn appears to have been justified.  Thus, the
8 officers' actions of forcibly removing Strawn and handcuffing her were unnecessary, unwarranted,
9 and unreasonable.  Because the allegations indicate an unreasonable use of force by Sokoloff and
10 Anaya against Strawn, the Complaint plausibly alleges a battery claim against them.  See Bowoto,
11 621 F.3d at 1129; Yount, 43 Cal.4th at 902; Edson, 63 Cal.App.4th at 1274.

12    Defendants argue that the Complaint fails to adequately allege that Strawn did not consent
13 to the contact by the officer and that there are no allegations that show the officers intended to
14 harm Strawn.  The Court is not persuaded by these arguments.

15    First, it is true that lack of consent is an essential element of battery.  Conte v. Girard
16 Orthopaedic Surgeons Med. Grp., Inc., 107 Cal.App.4t h 1260, 1266 (2003); see also CACI §
17 1305A (2023 ed.).  It is also true that the Complaint fails to expressly allege that Strawn did not
18 consent to being forcibly removed from the City council meeting, being placed in handcuffs, and
19 placed in the patrol car.  However, under the circumstances alleged, there is nothing to suggest
20 that Strawn consented to the process.  She has alleged that she was battered and arrested without
21 probable cause and has brought this lawsuit.  While it is true that Strawn appears to have complied
22 with the orders of Sokoloff and Anaya, she was under a duty not to obstruct or resist the officers.
23 See Penal Code §§ 148, 834a; see also Hubbard v. Boelt, 28 Cal.3d 480, 486 (1980).  The Court
24 will not infer consent merely because she was following the directives of Sokoloff and Anaya
25 without resistance.  Given these considerations, it is reasonably inferred that Strawn did not
26 consent to being forcibly removed from the City council meeting, being handcuffed, or being
27 placed in the patrol car.

28    Second, the intent required to commit a civil battery is the intent to touch.  See Conte, 107

11

1 Cal.App.4th at 1266; see also CACI § 1305A. It is not the intent to cause harm. The Complaint
2 alleges that Defendants acted intentionally in the arresting process, including by forcibly removing
3 Strawn from the council meeting. See Complaint at ¶ 38. States of mind, such as intent, may be
4 alleged generally. See Fed. R. Civ. P. 9(b); Reinhardt v. Gemini Motor Transp., 879 F.Supp.2d
5 1138, 1142 (E.D. Cal. 2012). Considering the factual allegations in the Complaint, as well as the
6 applicable standard of Rule 9(b), the Court is satisfied that the Complaint can reasonably be read
7 as alleging that Sokoloff and Anaya intentionally touched Strawn in a harmful or offensive way.

        3.        Assault

9         A tortious assault is a distinct cause of action that has different elements from a tortious
10 battery. See Booke v. County of Fresno, 98 F.Supp.3d 1103, 1130 (E.D. Cal. 2015); Brown v.
11 Ransweiler, 171 Cal.App.4th 516, 523 n.6 (2009). The tort of assault "recognizes the right of the
12 individual to peace of mind, to live without fear of personal harm." Thing v. La Chusa, 48 Cal.3d
13 644, 649 (1989). A tortious assault is a "demonstration of an unlawful intent by one person to
14 inflict immediate injury on the person of another then present." Plotnik v. Meihaus, 208
15 Cal.App.4t h 1590, 1604 (2012); Lowry v. Standard Oil Co., 63 Cal.App.2d 1, 6-7 (1944); see
16 Booke, 98 F.Supp.3d at 1130. A plaintiff must reasonably believe that she is about to be
17 harmfully or offensively touched, or must reasonably believe that the defendant is about to carry
18 out a threat to harmfully or offensively touch her. See Carlsen v. Koivumaki, 227 Cal.App.4th
19 879, 890 (2014). "The tort of assault is complete when anticipation of harm occurs." Kiseskey v.
20 Carpenters' Trust for S. Cal., 144 Cal.App.3d 222, 232 (1983). Finally, the assaultive conduct
21 must be done without consent. See Carlsen, 227 Cal.App.4th at 890.

22         Here, the Complaint does not plausibly allege a tortious assault. There are no allegations
23 that demonstrate Strawn was threatened with a harmful or offensive touching, nor are there factual
24 allegations that describe how or why Strawn may have reasonably feared that she was going to be
25 harmfully or offensively touched. The Complaint merely alleges that the officers stated that
26 Strawn was under arrest and then began the arrest process. Merely stating that someone is under
27 arrest does not necessarily mean that a harmful or offensive touching will occur. Therefore, no
28 plausible assault claim is stated and dismissal is appropriate.

4. False Arrest/False Imprisonment

"'False arrest' and 'false imprisonment' are not separate torts," rather "[f]alse arrest is but one way of committing a false imprisonment." Asgari v. City of Los Angeles, 15 Cal.4th 744, 752 n.3 (1994). The tort of false imprisonment consists of the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." Rhoden v. United States, 55 F.3d 428, 430 (9th Cir. 1995); Fermino v. Fedco, Inc., 7 Cal.4th 701, 715 (1994). A person may be constrained or confined in various ways, including physical force, threat of force or of arrest, confinement by physical barriers, or by means of any other form of unreasonable duress. Fermino, 7 Cal.4th at 715. A police officer is not civilly liable for a false arrest if at the time of arrest the officer "had reasonable cause to believe that the arrest was lawful." Cal. Pen. Code § 847(b)(1); Cornell v. City & Cty. of San Francisco, 17 Cal.App.5th 766, 785-86 (2017); O'Toole v. Superior Ct., 140 Cal.App.4th 488, 511 (2006). "Reasonable cause" is determined through an objective test that asks whether the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt. See O'Toole, 140 Cal.App.4th at 511; see also Levin v. United Air Lines, Inc., 158 Cal.App.4th 1002, 1018 (2008). The phrases "reasonable cause" and "probable cause" for purposes of § 847(b)(1) can be used interchangeably. Cornell, 17 Cal.App.5th at 786.

Here, the Complaint alleges several times that Strawn was arrested without probable cause to believe that a crime was being committed. While this is a legal conclusion, the factual allegations support the assertion. Strawn was lawfully at a City council meeting. She was told to put on a mask and complied. She was then told to put the mask over her nose. When she simply pointed out that she was wearing her mask in the identical manner that Sokoloff was wearing his mask, Sokoloff then arrested her. The Court is aware of no crime that is implicated by Strawn's conduct and Defendants have identified none. Based on part of a public document issued by the CDPH, the Court accepts that the CDPH had imposed a mask mandate at the relevant time. However, the language of the mandate has not been submitted to the Court. Simply because a mandate existed does not *per se* mean that Sokoloff had the power to arrest, particularly when Strawn's statement merely compared how she and Sokoloff were wearing their masks. Therefore,

13

the FAC plausibly alleges that Strawn was arrested without probable cause, which supports a false imprisonment claim.

Defendants argue that the factual allegations do not show the absence of consent or the absence of lawful privilege. However, the imprisonment at issue took the form of an arrest and transport to the police station. As discussed above, the Complaint plausibly alleges the absence of probable cause, and the mere existence of the CDPH mask mandate does not mean that Sokoloff and Anaya had the power to arrest Strawn. Therefore, the Complaint does in fact plausibly allege the absence of lawful privilege. Further, because the false imprisonment was accomplished through a false arrest without a warrant, consent is not an element of Strawn's claim.[2] See Carcamo v. L.A. Cty. Sherriff's Dept., 68 Cal.App.5th 608, 616 (2021); CACI No. 1401 (2023 ed.).

Citing *Collins v. City & Cty of San Francisco*, 50 Cal.App.3d 672, 677 (1975), Defendants aver that an arrest "under color of law" cannot support a false arrest claim and that Sokoloff and Anaya arrested Strawn under color of law/within the scope of their authority as police officers. The Court cannot agree with Defendants as they are misreading *Collins*.

Although *Collins* did find that an arrest was "under color of law," *Collins* did not use "under color of law" to mean "actions done within the course and scope of one's duties as a peace officer." The phrase was used to describe an arrest that was performed pursuant to a warrant. See id. at 674-77. The language of *Collins* that discusses an arrest "under color of law" was in the context of contrasting malicious prosecution claims from false arrest claims. See id. at 676-77. In finding that malicious prosecution was at issue because the arrest was made pursuant to a warrant and thus, "under color law," *Collins* cited the following from Prosser on Torts (2d ed. 1955):

> If the defendant complies with the formal requirements of the law, as by swearing out a valid warrant, . . . [he is liable], if at all, only for a misuse of legal process to effect a valid arrest for an improper purpose. . . . [T]he difference is one of the regularity of the legal process under which the plaintiff's interests have been invaded. If he is arrested or confined without a warrant, or legal authority apart from a warrant, malicious prosecution will not lie, since the essence of that tort is the perversion of proper legal procedure, and the remedy is false imprisonment. On the other hand, if there is valid process or due authority apart from it the arrest is

---

[2] The absence of consent is an element to a false imprisonment claim where an arrest is not involved. See Firmino, 7 Cal.4th at 716; CACI No. 1400 (2023 ed.).

14

not 'false' and the action must be one on malicious prosecution. Id. at 677. Under *Collins*, an arrest without a warrant gives rise to a false arrest/false imprisonment claim, not a malicious prosecution claim. See id.; Cummings v. Fire Ins. Exchange, 202 Cal.App.3d 1407, 1422 (1988). In this case, Sokoloff arrested Strawn without a warrant, and Strawn is not alleging malicious prosecution. Therefore, *Collins* does not require the dismissal of Strawn's false arrest claim.

5. IIED, NIED, Gross Negligence, & Willful and Wanton Negligence[3]

The City argues that the Complaint alleges direct liability against it with respect to the IIED, NIED, gross negligence, and willful and wanton negligence claims, but improperly fails to allege a statute that imposes direct liability.

Pursuant to the California Government Claims Act (Cal. Gov. Code § 810 *et seq.*), "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person." Cal. Gov't Code § 815(a). Thus, "[a]ll government tort liability must be based on statute." Hoff v. Vacaville Unified Sch. Dist., 19 Cal.4th 925, 932 (1998). The Government Claims Act "draws a clear distinction between the liability of a public entity based on its own conduct, and the liability arising from the conduct of a public employee." de Villers v. County of San Diego, 156 Cal.App.4th 238, 251 (2007). For direct liability, a "specific statute declaring [the entity] to be liable, or at least creating some specific duty of care" must be identified. Eastburn v. Regional Fire Protection Authority, 31 Cal.4th 1175, 1183 (2003); Koussaya v. City of Stockton, 54 Cal.App.5th 909, 943 (2020); de Villers, 156 Cal.App.4th at 252. For vicarious liability, California Government Code § 815.2 "expressly makes the doctrine of *respondeat superior* applicable to public employers." Hoff, 19 Cal.4th at 932; see also Eastburn, 31 Cal.4th at 1180. Specifically, a "public entity is liable for injury proximately caused by an act or omission of an

---

[3] "Negligence," or "ordinary negligence," is an unintentional tort that consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect other from harm. City of Santa Barbara v. Superior Ct., 41 Cal.4t h 747, 753-54 (2007). "Gross negligence" is either the "want of even scant care," or "an extreme departure from the ordinary standard of care." Id. at 754 (quotations omitted). "Willful and wanton negligence" is conduct by a person who may not intend to cause harm, but who intentionally performs an act so unreasonable and dangerous that he or she knows or should know it is highly probable that harm will result." Id. at 754 n.4.

1  employee of the public entity within the scope of his employment if the act or omission would,
2  apart from this section, have given rise to a cause of action against that employee or his personal
3  representative." Cal. Gov't Code § 815.2(a).

4  Here, the City is correct. The Complaint identifies no statutes that impose direct liability
5  against the City for the IIED, NIED, gross negligence, and willful and wanton negligence claims.
6  Because the Complaint fails to identify an appropriate statute, dismissal of these claims against the
7  City based on a direct liability theory is appropriate. See Young, 687 F.Supp.3d at 1164.

8  However, with respect to the gross negligence and willful and wanton negligence claims,
9  the Complaint alleges that the officers acted individually and as employees of the City. See
10 Complaint ¶ 50. Although the Complaint does not expressly cite to Gov. Code § 815.2(a), the
11 inclusion of the allegation that the officers were acting as City employees is significant and clearly
12 implicates § 815.2(a). The City makes no arguments that § 815.2(a)'s application of *respondeat*
13 *superior* would somehow not apply to the actions of Sokoloff or Anaya with respect to the gross
14 negligence and willful and wanton negligence claims. Construing the allegations in the light most
15 favorable to Strawn, see Benavidez, 993 F.3d at 1144, the Court is satisfied that the Complaint has
16 adequately invoked § 815.2(a). Therefore, the Court concludes that *respondeat superior* liability
17 through § 815.2(a) has been plausibly alleged, and that dismissal of the gross negligence and
18 willful and wanton negligence claims on a vicarious liability theory is not proper.

19      6.   Negligent Hiring, Retention, Supervision, and Training

20 The City contends that it cannot be liable for negligently hiring, retaining, supervising, and
21 training Sokoloff and Anaya because there is no statute that imposes such a duty. The City also
22 avers that it cannot be vicariously liable for negligently hiring, retaining, supervising, and training
23 Sokoloff and Anaya because a special relationship did not exist between Strawn and the City.

24 With respect to direct liability, the City is correct. As discussed above, all tort liability
25 against a public entity must be based on a statute. Hoff, 19 Cal.4th at 932. Neither the Complaint
26 nor the opposition identify a statute that would impose direct liability against the City for these
27 negligence based claims. Therefore, dismissal of these claims on a direct liability theory is
28 appropriate.

16

With respect to vicarious liability, the City is again correct. In order for a public employee to be liable for negligent hiring, training, retention, or supervision, and in order for the governmental employer to be vicariously liable through § 815.2(a), there must be a "special relationship" that exists between the plaintiff the public employee supervisor. See C.A. v. William S. Hart Union High Sch. Dist., 53 Cal.4t h 861, 877 (2012); see also Estate of Jackson, 2022 U.S. Dist. LEXIS 137906, *34 (E.D. Cal. Aug. 3, 2022); Rodriguez v. County of L.A., 2021 U.S. Dist. LEXIS 214894, *15 (C.D. Cal. Oct. 22, 2021); Estate of Wilson v. County of San Diego, 2020 U.S. Dist. LEXIS 121662, *20-*22 (S.D. Cal. July 10, 2020); Bauer v. City of Pleasanton, 2020 U.S. Dist. LEXIS 52478, *18-*19 (N.D. Cal. Mar. 26, 2020); Estate of Osuna v. County of Stanislaus, 392 F.Supp.3d 1162, 1182 (E.D. Cal. 2019); Herd v. County San Bernardino, 311 F.Supp.3d 1157, 1171-72 (C.D. Cal. 2018). Neither the Complaint nor Strawn's opposition allege or describe a special relationship that existed between Strawn and the supervisors of Sokoloff and Anaya. Therefore, no plausible vicarious liability claim is alleged and dismissal is appropriate. See Estate of Jackson, 2022 U.S. Dist. LEXIS 137906 at *35; Rodriguez, 2021 U.S. Dist. LEXIS 214894 at *15; Estate of Wilson, 2020 U.S. Dist. LEXIS 214894 at *22.

       7.      Punitive Damages

           a.      The City

"[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); see Mitchell v. Dupnik, 75 F.3d 517, 527 (9th Cir. 1996). Similarly, California prohibits a plaintiff from obtaining punitive damages against a public entity. Cal. Gov. Code § 818; Kizer v. County of San Mateo, 53 Cal.3d 139, 141 (1991); Los Angeles Unified Sch. Dist. v. Superior Ct., 64 Cal.App.5th 549, 554 (2021); see United Nat'l Maint., Inc. v. San Diego Convention Center, Inc., 766 F.3d 1002, 1012 (9th Cir. 2014). Therefore, Strawn's request for punitive damages against the City will be dismissed without leave to amend.

           b.      The Officers

"[W]hile malice, intent, and knowledge (and other mental states) may be alleged generally under Rule 9(b), factual allegations must still be sufficient to meet the standard of *Iqbal* to

adequately support a request for punitive damages." Warnshuis v. Bausch Health U.S., LLC, 2020 U.S. Dist. LEXIS 107136, *39 (E.D. Cal. June 18, 2020).

Here, the Complaint indicates that there was no legal basis to arrest Strawn. Instead, the arrest appears to have been prompted by Strawn pointing out Sokoloff's apparent hypocrisy over how to properly wear a mask. Therefore, the allegations indicate an unlawful seizure that was made in reckless disregard to Strawn's Fourth Amendment rights. The Court will not dismiss Strawn's request for punitive damages.

### 8. Leave to Amend

The Court has found that the Complaint fails to state plausible *Monell* claims based on inadequate training, ratification, and inadequate supervision. The Court has also found that the Complaint fails to state plausible state law claims for assault, negligent hiring, training, retention, and supervision, NIED and IIED against the City, and gross negligence and willful and wanton negligence against the City based on direct liability. Because it is not clear that amendment would be futile, the Court will dismiss these claims with leave to amend. Any amended Complaint must be consistent with the analysis of this order and with Rule 11. Further, as part of her opposition, Strawn included additional allegations that described the force used on her, including the difficulties she had while being placed in the patrol vehicle. Strawn may include these additional allegations, and any additional factual allegations she deems helpful, as part of an amended complaint.

### 9. Rule 12(e) Request

Rule 12(e) provides for a motion for more definite statement, but only when a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e); CMAX, Inc. v. Hall, 290 F.2d 736, 738 (9th Cir. 1961). A Rule 12(e) motion "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e); Apothio, LLC v. Kern Cty., 599 F.Supp.3d 983, 999 (E.D. Cal. 2022). A Rule 12(e) motion is appropriately used to attack unintelligibility, not a mere lack of detail. See Apothio, 599 F.Supp.3d at 999; Herd, 311 F.Supp.3d at 1162; see also DeWitt v. Pail, 366 F.2d 682, 685 (9th Cir. 1966 (noting that a Rule 12(e) motion is one way of "correcting a vague and prolix

complaint"). Where the information desired by the moving party is available and properly sought through discovery, a Rule 12(e) motion should be denied. Public Lands for the People, Inc. v. USDA, 733 F.Supp.2d 1172, 1200 (E.D. Cal. 2010).

Here, Defendants do not identify what specific information is needed for them to respond to any of the claims asserted. Moreover, the Court cannot find that the non-dismissed claims in the Complaint are so vague and unintelligible that a responsive pleading cannot be made. To the extent that Defendants would like additional detail, that can be obtained through the discovery process. Therefore, Defendants' Rule 12(e) motion will be denied.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 10) is GRANTED with leave to amend with respect to the following claims:
    a. *Monell* claims based on ratification, inadequate training, and inadequate supervision;
    b. Assault;
    c. Negligent hiring, training, retention, and supervision;
    d. Negligent infliction of emotional distress and intentional infliction of emotional distress against the City; and
    e. Gross negligence and willful and wanton negligence against the City based on a direct liability theory;
2. Defendants' motion to dismiss is GRANTED without leave to amend with respect to Plaintiff's request for punitive damages under state and federal law against the City;
3. Defendants' motion to dismiss is otherwise DENIED;
4. Defendants' alternative Rule 12(e) motion for more definite statement is DENIED;
5. Within twenty-one (21) days of service of this order, Plaintiff may file an amended complaint that is consistent with this Order; and

6.  If Plaintiff fails to timely file an amended complaint, then leave to amend shall be automatically withdrawn without further notice, and Defendants shall file an answer to the Complaint within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated:  March 31, 2023

_____
SENIOR DISTRICT JUDGE